IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| ROJELIO BRIONES,<br><br>    Petitioner,<br><br>    v<br><br>WARDEN D K SISTO,<br><br>    Respondent.<br>_____/ | No   1-08-cv-0730 VRW<br><br>ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS |

        Petitioner Rojelio Briones, a California state prisoner proceeding pro se, seeks a writ of habeas corpus under 28 USC § 2254. For the reasons set forth below, a writ is DENIED.

I

        On May 20, 2004, petitioner was charged with eight felony counts based on an incident where he destroyed property in his former girlfriend, Phyllis Sepeda's garage and resisted arrest. The state appellate court summarized the facts of this incident thusly:

> The instant prosecution occurred as a result of an incident at Sepeda's house around 1:00 am on April 24, 2004. Bakersfield Police Officers Garcia, Ward, Wells, and Hatcher responded to Sepeda's house on a dispatch about a burglary in progress. . . . Officer Ward was accompanied by his canine partner, a German Shepard named Hunter. The four officers were in full uniform,

and approached the house from different positions. . . . Officers Ward and Hatcher entered the backyard and heard crashing sounds in the garage. Hatcher aimed his flashlight through the garage window and saw a subject moving around and holding a big piece of wood or baseball bat in his hand. The subject was swinging the device to destroy furniture in the garage. Hatcher identified themselves as police officers and shouted at the subject to stop. The subject turned and headed toward the garage door.

At the same time, Officer Garcia approached the front of the garage and also heard crashing sounds. Garcia jumped over a small chain link fence to get closer to the garage, and [petitioner] ran out of the garage door. Officer Garcia testified that [petitioner] looked directly at him, and then took a step toward him. [Petitioner] appeared to be holding a large baseball bat, but Officer Garcia later determined he held a large wooden bedpost taken from a bedroom set stored in Sepeda's garage. [Petitioner] held the wooden post high above his shoulder, similar to a baseball stance. Officer Garcia pulled his service revolver and shouted to the other officers that [petitioner] had a weapon.

[Petitioner] turned and ran away, but he immediately collided with Officers Hatcher and Ward. Ward thought appellant was holding "an extra large" baseball bat. [Petitioner] raised the weapon in his right hand, as if it was a hatchet and he was going to make a chopping motion. Ward thought [petitioner] was going to attack them with it. The officers tackled [petitioner] and attempted to take him into custody. [Petitioner] was still swinging his weapon.

Officer Ward repeatedly yelled at [petitioner] to stop resisting and get on the ground, but [petitioner] struggled and broke free, and ran toward the street. Officer Hatcher believed [petitioner] dropped the wooden post. Officer Garcia returned his service revolver into his holster and drew his 29-inch wooden baton. Garcia struck [petitioner] once in the knee with the baton and tried to take him into custody. [Petitioner] kept running and headed toward the backyard fence.

Officer Ward was dazed from the struggle, but he deployed his canine partner, Hunter, and shouted "canine" to alert the other officers. Hunter made contact with [petitioner], bit his buttocks, and brought him down. [Petitioner] was on the ground and tried to push himself up, but Hunter was on top of his buttocks. The officers repeatedly shouted they were the police and ordered [petitioner] to place his hands

2

behind his back, but he refused to comply. Ward knelt on top of [petitioner's] right side and tried to gain control of his right hand. [Petitioner] grabbed Ward's knees and legs, and actually touched his gun holster. Ward believed [petitioner] was trying to get his gun, and hit [petitioner] twice on the right side of his face with a closed fist.

[Petitioner] finally stopped struggling and Ward ordered Hunter to release his hold on [petitioner]. As Officer Ward stepped back with the dog, [petitioner] jumped up and ran toward the fence next to the garage. The officers chased [petitioner] and continued to order him to stop and get on the ground. As [petitioner] approached the fence, Officer Garcia administered pepper spray into his face. The spray usually incapacitates most people, but [petitioner] did not stop and continued toward the fence. Officer Garcia grabbed [petitioner's] head, arm, and upper body, but [petitioner] held onto the top rail of the chain-link fence and refused to let go. Officer Garcia told [petitioner] to stop resisting, but he continued to struggle. Garcia testified the officers hit [petitioner] hard, to make him stop, but [petitioner] continued to resist. Garcia put [petitioner's] head and arm in a headlock, and then used "a distraction technique" and "kneed him in the sciatic nerve in the side of his right leg."

[Petitioner] finally let go of the fence and Officer Garcia threw him to the ground. The four officers attempted to place [petitioner] in handcuffs, but [petitioner] continued to punch, kick, and pull away from them. [Petitioner] was on the ground, and swung his fists at the officers and tried to kick them, but could not get away. Hatcher believed [petitioner] hit him once or twice in the chest. Officer Ward again deployed his canine partner, and the dog grabbed [petitioner] and bit him. The officers finally restrained [petitioner] and placed him in handcuffs.

Officer Garcia testified the entire encounter with [petitioner] lasted eight or nine minutes. Garcia testified the officers repeatedly shouted at [petitioner] to stop resisting, both before and after the first instance when Officer Ward deployed his canine partner. [Petitioner] ignored their commands and continued to resist. [Petitioner] never took a full baseball-like swing at any of the officers. Officer Garcia believed [petitioner] dropped the wooden bedpost outside the garage, when he struggled with Ward and Hatcher.[FN1]

> FN1 On cross-examination, Officer Garcia conceded he testified at the preliminary

3

> hearing that [petitioner] actually hit
> Officer Ward with the bedpost, but
> clarified the incident did not happen.
>
> [Petitioner] was taken to the hospital to treat
> cuts and bruises suffered during the struggle.
> Officers Ward and Hatcher suffered minor injuries.

People v Briones, No F048663, 2006 WL 2978302 at *3-5 (Cal App 5th Dist 2006).

II

On June 13, 2005, a jury found petitioner guilty of felony resisting an officer with force or violence (Cal Pen Code § 69) and misdemeanor vandalism (Cal Pen Code § 594(a)). The trial court found that he suffered three prior strike convictions and imposed the third strike term of 25 years to life for his felony conviction, and a concurrent term of 180 days for his misdemeanor conviction.

The California Court of Appeal affirmed the judgment in an unpublished opinion. Briones, 2006 WL 2978302 at *41. The Supreme Court of California denied review. Petitioner did not seek review via a state habeas petition.

Petitioner filed the instant federal habeas petition on May 9, 2008. The contentions raised in this petition are set forth in the Petition For Review submitted to the Supreme Court of California, which petitioner incorporates by reference and attaches as Exhibit A. Petitioner alleges that there was insufficient evidence to support his conviction of resisting an officer, that the trial court violated his right to due process when it refused to look behind his prior conviction to determine whether it was a strike, and that the trial court committed error when it refused to

4

reduce a felony conviction to a misdemeanor or strike prior convictions.

Respondent filed an answer on September 29, 2008. Petitioner filed a traverse on December 9, 2008.

III

This court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 USC § 2254(a); <u>Rose v Hodges</u>, 423 US 19, 21 (1975).

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 USC § 2254(d); <u>Williams v Taylor</u>, 529 US 362, 412-13 (2000). If the state court did not reach the merits of a claim, federal review of the claim is de novo. <u>Nulph v Cook</u>, 333 F3d 1052, 1057 (9th Cir 2003).

A federal court must presume the correctness of the state court's factual findings. 28 USC § 2254(e)(1). The state court decision implicated by 2254(d) is the "last reasoned decision" of the state court. See <u>Ylst v Nunnemaker</u>, 501 US 797, 803-04 (1991); <u>Barker v Fleming</u>, 423 F3d 1085, 1091-92 (9th Cir 2005).

5

Habeas relief is warranted only if the constitutional error at issue had a "'substantial and injurious effect or influence in determining the jury's verdict.'" Penry v Johnson, 532 US 782, 796 (2001).

## IV

### A

Petitioner contends that there was insufficient evidence to support his conviction of resisting arrest with force. He alleges that he did not use force to resist arrest until after officers had used unreasonable force on him, and that his use of reasonable force in self-defense constituted a defense to the charges against him as a matter of state law. See People v Curtis, 70 Cal 2d 347, 359 (1969).

The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 US 358, 364 (1970). A federal court reviewing collaterally a state court conviction does not determine whether it is satisfied that the evidence established guilt beyond a reasonable doubt. Payne v Borg, 982 F2d 335, 338 (9th Cir 1992). The federal court "determines only whether, 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" See id (quoting Jackson v Virginia, 443 US 307, 319 (1979). Only if no rational trier of fact could have found proof of guilt beyond a reasonable doubt, may the writ be granted. See Jackson, 443 US at 324.

6

The elements of resisting arrest with force in violation of Cal Pen Code § 69 are: 1) a person willfully [and unlawfully] attempted to deter or prevent an executive officer from performing any duty imposed upon that officer by law; and 2) the attempt was accomplished by means of threat or violence. CALJIC No 7.50.

Here, there was sufficient evidence to support petitioner's conviction. In addressing this claim, the court of appeal noted:

> [Petitioner] declares he did not punch or kick at the officers until "after he had been viciously attacked by a police dog, kicked in the sciatic nerve, and assaulted with pepper spray." The record demonstrates, however, that [petitioner] punched, kicked, and generally flailed at the officers as he tried to run from the garage and hold onto the bedpost, and that he engaged in force or violence to resist the officers substantially earlier than Officer Ward deployed his canine partner, Officer Garcia kicked him in the sciatic nerve, or Garcia used the pepper spray. [Petitioner] was obliged to surrender once he was knew that police officers were ordering him to drop his weapon and get down on the ground. He ignored their initial orders and tried to run, but collided into Ward and Hatcher as he left the garage. He ignored their orders, broke free, and ran toward the back of the yard. At that point, Ward ordered his canine partner to restrain the suspect. [Petitioner] still refused the officers' orders to surrender, managed to touch Ward's gun holster, and was able to escape after being brought down by the dog. He ran toward the garage and tried to jump over the fence, and Garcia administered the pepper spray. [Petitioner] held onto the fence and refused to surrender, and the officers tackled him and Garcia kicked his sciatic nerve. The officers threw him back into the yard, [petitioner] continued to kick and punch at them, and Officer Ward again deployed his canine partner. [Petitioner] was finally subdued and placed into handcuffs.

Briones, 2006 WL 2978302 at *14. Petitioner's punching, kicking and flailing at the officers as he tried to run from the garage provided evidence on basis of which a reasonable juror could find petitioner guilty of resisting arrest with force.

7

Petitioner argues that he was violently tackled by Officer Ward as soon as he exited the garage, and that the police thus used excessive force *before* he used any force to resist. Pet's Ex A at 10-11. He asserts that the state court's rejection of this argument constituted an unreasonable determination of the facts in light of Officer Garcia's and Officer Ward's testimony at trial. Traverse at 6. The record does not support petitioner's contention. Officer Garcia merely testified that Officer Ward "collided" with petitioner when he emerged from the garage. Reporter's Transcript ("RT") at 226-27. Officer Ward testified that he "tackled" petitioner because he saw him making a chopping motion with the bedpost and thought that petitioner was going to hit him. RT 273-74. Their testimony does not establish that the officers used unreasonable force before petitioner resisted arrest.

Petitioner's argument that his alleged use of reasonable force in self-defense negated an element of his crime as a matter of state law is also unavailing. As noted above, the evidence does not establish that the officers used excessive force, and shows that petitioner was resisting arrest with force rather than acting in self-defense. Moreover, petitioner fails to identify any Supreme Court authority supporting his contention. The state court reasonably rejected petitioner's claim.

B

Petitioner alleges that the trial court violated his right to due process by refusing to look behind two of his prior convictions to determine whether they were a strike. He asserts that by declining to examine his entire record of conviction, the

8

trial court denied him access to a process used by prosecutors, namely "going behind" guilty pleas to prove that convictions are strikes.

Petitioner pled guilty in 1991 to assault with a stun gun and false imprisonment with enhancements as to both offenses for personal use of a deadly or dangerous weapon. (Cal Pen Code § 12022 (b)). The enhancements were based on petitioner's use of a stun gun to twice shock his former girlfriend and force her into a car. Petitioner asserts that the preliminary hearing record demonstrates that he did not use the stun gun as a dangerous or deadly weapon, and that his convictions therefore are not serious felonies that qualify as strikes.

California's three strike law provides that a prior felony conviction constitutes a strike if it is a serious or violent felony. Cal Pen Code § 667(d)(1). Neither assault with a stun gun nor false imprisonment are serious or violent felonies, but any felony in which a defendant used a dangerous or deadly weapon constitutes a serious felony. Cal Pen Code § 1192.7(c)(23). A defendant's admission to a Cal Pen Code § 12022(b) enhancement that he used a deadly or dangerous weapon in the commission of a felony constitutes proof of a serious felony within the meaning of Cal Pen Code § 1192.7(c)(23). People v Equarte, 42 Cal 3d 456, 465 (1986).

The state court reasonably rejected petitioner's claim. It concluded that the trial court properly found the 1991 convictions to be serious felonies on the grounds that a guilty plea admits all of the elements of the charged offense, regardless of the defendant's actual conduct. Briones, 2006 WL 2978302 at

9

*25-26, 30. The court noted that Ninth Circuit authority permits a defendant to relitigate those facts that were not resolved as part of prior convictions, but distinguished petitioner's case in that "the bare facts of [his] 1991 prior convictions established their nature as serious felonies, based on his admissions of the section 12022, subdivision (b) enhancement." Briones, 2006 WL 2978302 at *30 (citing Gill v Ayers, 342 F3d 911 (9th Cir 2003)).

Petitioner fruitlessly relies on Wardius v Oregon, 412 US 470 (1973) to support of his contention that the trial court violated his due process rights by denying him access to a process used by prosecutors. Although in Wardius, the Supreme Court expressed suspicion of state rules which provide nonreciprocal benefits to the state when the lack of reciprocity interferes with a defendant's ability to receive a fair trial, it did so in the context of discovery afforded by Brady v Maryland, 373 US 83 (1963). Id at 474 n6. Wardius does not compel a different result in petitioner's case.

Petitioner fails to demonstrate that the state court decision was contrary to or unreasonable application of United States Supreme Court precedent. His claim lacks merit.

C

Petitioner alleges that the trial court abused its discretion when it denied his motion to either dismiss his prior strike convictions pursuant Cal Pen Code § 1385, or to reduce his felony conviction for resisting arrest with force to a misdemeanor pursuant to Cal Pen Code § 17(b). The state court found that the

\\

trial court properly denied his motion. <u>Briones</u>, 2006 WL 2978302 at *41.

Petitioner's claim raises questions of state law that are not cognizable on federal habeas. A person in custody pursuant to the judgment of a state court can obtain a federal writ of habeas corpus only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States. 28 USC § 2254(a). In other words, a writ of habeas corpus is available under § 2254(a) "only on the basis of some transgression of federal law binding on the state courts." <u>Middleton v Cupp</u>, 768 F2d 1083, 1085 (9th Cir 1985) (citing <u>Engle v Isaac</u>, 456 US 107, 119 (1982)), <u>cert denied</u>, 478 US 1021 (1986). It is unavailable for violations of state law or for alleged error in the interpretation or application of state law. <u>Estelle v McGuire</u>, 502 US 62, 67-68 (1991). Here, whether the state court properly denied petitioner's motion under Cal Pen Code §§ 17(b) and 1385 is a matter solely of state law. Accordingly, petitioner's claim is denied.

V

For the reasons set forth above, the petition for a writ of habeas corpus is DENIED. The clerk shall enter judgment in favor of respondent and close the file.

IT IS SO ORDERED.

                                                
Vaughn R Walker
United States District Chief Judge

11